## Eisenberger *v.* Auto Maintenance Company, Appellant.

*Replevin—Disputed question of title.*

In an action of replevin by a husband as executor of his wife, to recover an automobile, it appeared that the defendant had purchased the automobile and given his note therefor. Subsequently the seller having refused to renew the note, the decedent gave him in substitution, her note, and the defendant receipted to her in full for the pur-

chase money of the automobile. *Held,* that as the defendant had acquired a full title to the machine by giving his own note therefor, he had a right to make any arrangement with the decedent as to the substitution of her note for his own note, and had therefore a right to sell to her the machine.

In such a case it is immaterial that the defendant may have paid voluntarily out of his own pocket a portion of the decedent's note. Such payment did not revest in him title to the machine.

Argued Oct. 10, 1911. Appeal, No. 99, Oct. T., 1911, by defendant, from judgment of C. P. No. 3, Phila. Co., June T., 1905, Nos. 1,905, 3,011, on verdict for plaintiff in case of William V. Eisenberger, Administrator c. t. a. of Estate of Jennie M. Eisenberger, deceased, v. Auto Maintenance Company and John Moore. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Replevin to recover an automobile. Before FERGUSON, J.

The record showed that a property bond had been entered and the machine delivered to the defendant.

The facts are stated in the opinion of the Superior Court.

At the trial when John Moore, the defendant, was on the stand he was asked this question:

"Q. What was the agreement with Mr. Krider, originally?" Objected to.

"A. The machine was to belong to Mr. Krider——"

Mr. Mirkil: I object to any original agreement he may have had with Krider. The title of the machine passed according to the papers.

The Court: Is the witness going to prove that he sold Mr. Krider's machine to Mrs. Eisenberger?

Mr. Carr: No, I wanted to show that Mr. Krider did not part with the machine at all, and that it was the understanding that title was to remain in Krider until the whole thing was paid off. Objected to. Objection sustained. Exception for defendants. [1]

"Q. What was your original agreement as to the title

to the machine with Mr. Moore and Mr. Eisenberger?" Objected to. Objection sustained. Exception for defendant. [2]

Mr. Carr: I offer in evidence a bill of sale dated May 13, 1905. Objected to. Objection sustained. Exception for defendant. [3]

The court charged in part as follows:

[There is evidence that Moore finally paid $400 or $525, whichever it might be. There is some evidence that the car was left with Moore after Eisenberger retired, and that the former arrangement, under which Mrs. Eisenberger was to receive rentals for the car continued, and it might be that Moore paid what he paid Krider out of rentals due Mrs. Eisenberger, but as to that you have also no evidence at all, and yet it might have been the fact. I say that because we have no definite evidence at all on the subject of accounts.] [4]

[If Moore paid the money out of his own pocket and paid Eisenberger's note with his money, it would be what the law calls a voluntary payment. There is nothing in the world that prevents me paying the note of you gentlemen if I have the money to pay it. If you had an indebtedness at a bank, and I went down and handed my money in to pay that indebtedness, I would have a perfect right to do it, and doubtless you would be very much obliged to me if I did it, but if I should afterwards discover that I had, in a fit of mental aberration, paid your debt, and I went to you and said, "I paid your debt by mistake" or "I paid your debt, and I want you to give me my money back" or, "I paid a note held by your bank and I now want you to make me good," you could say, "You were not obliged to pay my debt; that is what the law calls a voluntary payment and you cannot recover; there is no obligation on my part to pay it back." Recollect that the question of the payment of the note is a matter entirely separate from the question of the title to the car.] [5]

[What is the value of the car? As I said a moment ago, that is a matter of some considerable difficulty. You have the right to use your own good judgment in arriving at a conclusion in the matter. There is evidence that it cost $1,200 at one time. There is evidence that Mrs. Eisenberger assumed obligations of $1,250, if she bought it at a later period. There is evidence that the car was a 1903 model; that it was in use by a public concern, doubtless for the use of the public, until July, 1905, the time the writ issued. There is also evidence as to the cost of repairs and cost of maintenance. There is the evidence of Moore that it was worth about $300 in July, 1905; there is the evidence of Krider that it was worthless at the time Moore paid the balance of the note. From that evidence you will arrive at a result, and to it you will apply all the knowledge and experience you have, and try to bring about what you think would be just as an estimate of the value of the car in July, 1905.] [6]

Verdict for plaintiff for $1,185.33, upon which judgment was entered for $900, all above that amount having been remitted. Defendant appealed.

*Errors assigned* were (1–3) rulings on evidence, quoting the bill of exceptions; (4–6) above instructions, quoting them, and (7) that the charge was inadequate.

*William A. Carr*, with him *W. Horace Hepburn* and *Sidney L. Krauss*, for appellant.

*I. Hazleton Mirkil*, for appellee.

OPINION BY BEAVER, J., March 1, 1912:

If it be kept clearly in mind that the plaintiff sues as the administrator of the estate of his deceased wife, and not as an individual, it will furnish the explanation and justification of a number of the rulings of the court in excluding evidence of which the appellant complains. The argument of the appellant seems to confound the plaintiff as an in-

dividual with him as the representative of the decedent's estate, and this gives rise to much of the apparent incongruity therein

One of the defendants borrowed from one Krider, the money with which the automobile, for which the replevin was brought, was purchased, and accepted his note therefor. When the note became due, Krider refused to renew, and accepted $150 in cash and the note of the plaintiff as an individual, given as he says as the agent of his wife, for $1,100, in payment of the note which he had previously held of the defendant, Moore. As a result of the transaction, the defendant receipted to the decedent for $1,250, being in full for purchase of Winton automobile. Signed Auto Maintenance Co., by John Moore, Mgr. This is not denied, as we understand it, by any of the parties to the transaction. Krider accepted the cash and new note in payment of the note given by Moore. Whatever, therefore, the arrangement may have been between Moore and Krider as to the title to the machine, it being fully paid for, the title, of course, passed to Moore, and he had the right to make any arrangement which might be made between him and the party paying his note therefor. It follows that the testimony offered and ruled out by the court, which constitutes the first, second and third assignments of error, was properly ruled out.

The fourth assignment, referring to an excerpt from the charge of the court, contains no error. It was admitted by Moore that he was to continue to pay Mrs. Eisenberger the one-half of the proceeds of the hire of the machine. He admitted also that he continued to hire the machine subsequent to her purchase thereof as above, and that he had never paid her any of the rentals or hire after that purchase, so that there was no strain on the part of the court in saying that, "It might be that Moore paid what he paid Krider out of rentals due Mrs. Eisenberger, but as to that you have also no evidence at all, and yet it might have been the fact." It was in evidence that Eisenberger, who he says acted for his wife, declined to pay

Krider after more than the one-half of the note had been paid, further saying that he must look to Moore for the balance or take the machine, and that Moore did actually pay either $400 or $525, whatever the balance due upon the Eisenberger note was. The court was probably not justified in saying that there was no evidence upon the subject, but there was certainly no error in saying what was said as to the source of the amount paid by Moore upon the balance of the Eisenberger note.

Nor do we see any error in the part of the charge complained of in the fifth assignment, which dealt with the alternative proposition that, "If Moore paid the money out of his own pocket, and paid Eisenberger's note with his money, it would be what the law calls a voluntary payment." The court explained very clearly to the jury what a voluntary payment was, and we see no objection thereto.

Nor is there serious objection to what is complained of in the sixth assignment as to the testimony as to the value of the car. The appellant argues this assignment as if there were no evidence in regard to the value, except that of the defendant himself and Krider, but there is evidence that the automobile cost originally $1,200 and that it had been carefully maintained and was in as good condition at the time of the replevin as at the time of the purchase. This clearly appears from the testimony of Eisenberger, who was not allowed to state his estimate of the value in dollars and cents, but he did state what the condition of the machine was at the time the replevin was issued. The jury, therefore, had before them evidence upon which they could base a fair judgment of value, their verdict, based upon the value of the machine at the time the replevin was issued and damages for its retention, being less than the value of the machine when purchased. The court, however, reduced the verdict to $900, which was acquiesced in by the plaintiff.

The complaint as to the inadequacy of the charge, made in the seventh assignment, although the ground upon

which that inadequacy is based does not appear, we think is without foundation.

The evidence as to value is very clearly set forth from the point of view both of the plaintiff and the defendant, and the alternative of finding for the plaintiff or the defendant, whether they found that the car belonged to Mrs. Eisenberger or to either of the defendants, was clearly left to the jury to determine.  These were questions of fact, based upon the evidence, clearly set forth by the court in its charge, and we see no reason to find any serious fault with the judgment, as finally entered, based upon reversible error, which we cannot find.

Judgment affirmed.